704 So.2d 247 (1997)
Craig A. LABORDE, Plaintiff-Appellee,
v.
SCOTTSDALE INSURANCE COMPANY, et al., Defendants-Appellants.
No. 96-1659.
Court of Appeal of Louisiana, Third Circuit.
October 22, 1997.
Rehearing Denied February 6, 1998.
*248 Brian M. Caubarreaux, Marksville, Anthony F. Salario, Baton Rouge, P.J. Laborde, Lake Charles, for Craig A. Laborde.
George Carnal Gaiennie, III, Alexandria, for Scottsdale Insurance Company.
Before COOKS, WOODARD, AMY, SULLIVAN and GREMILLION, JJ.
WOODARD, Judge.
Scottsdale Insurance Company (Scottsdale) and Palmetto Bayou Hunting Club, Inc. (Club), defendants, appeal a judgment, finding them liable for injuries to Craig A. Laborde (Laborde), caused by the plaintiff being shot in his lower leg by Edward Bernard (Bernard), a hunting companion, while hunting deer on the Club's premises, and casting the defendants for the full amount of the damages, even though the jury found the Club 5% at fault for the shooting. For the reasons below, we reverse.

FACTS
On November 27, 1994, Laborde and his friend, Danny Clark, decided to go deer hunting at the Club. Clark was a member of the Club, but Laborde was not. He went as Clark's guest. Bernard, also a member of the Club, was there. Bernard was unable to start his four wheeler all terrain vehicle, which was to have been his transportation to the deer stands. Thus, he decided to ride with Clark and Laborde on Clark's four wheeler to the deer stands located on a right of way on the Club's premises. It was about 2:30 p.m. The three men proceeded along a road to the right of way. There were three deer stands on the right of way. Bernard was dropped off at the first one, Laborde was dropped off at the second, and Clark went to the third. About dark, Clark left his stand, went to pick up Laborde in his four *249 wheeler. Then, the two rode in the direction of Bernard's stand.
When the two men reached the vicinity of Bernard's stand, Bernard aimed through the telescopic sight, on his Browning 270 caliber rifle, at the vehicle on which Clark and Laborde were riding and fired. The bullet struck Laborde in the lower leg, approximately four inches above his ankle.
Bernard maintained that it was an accident, that he did aim the rifle before firing it, and that he thought he was shooting at a hog. After the shooting, the three men rode the vehicle back to the Club. Laborde went home and explained to his parents what had happened. Then, he went to the emergency room of the Avoyelles Hospital where Dr. Predrag Gagic treated him.
He found a penetrating gunshot wound with an entrance and exit on the lateral aspect of the right lower leg, approximately two inches above the prominence of the fibula. He did not detect any nerve damage other than decreased sensation which he attributed to the dissection of the less important subcutaneous branches of the nerves in the area of the wound. He saw Laborde on eight other occasions. A minor infection of the wound was satisfactorily resolved, and the stitches ultimately removed. Dr. Gagic last saw Laborde on December 14, 1994.
Subsequently, Laborde was seen by an orthopedic surgeon, Dr. Louis Blanda, in February 1995. Following various studies, which were normal, the orthopedic surgeon thought he might have reflex sympathetic dystrophy and referred Laborde to a neurologist, Dr. James Domingue. Dr. Domingue diagnosed a right superficial peroneal nerve injury. Dr. Blanda concurred in this diagnosis and performed an outpatient procedure, a resection of the nerve ending.
Laborde also was seen by two psychologists who diagnosed depressive and anxiety disorders.
He filed suit against the Club, Scottsdale, Bernard, and State Farm Insurance Company (State Farm), alleging that they were solidarily liable for damages resulting from the gunshot wounds, the Club and Bernard were negligent, Scottsdale was the Club's liability insurer, and State Farm was Bernard's liability insurer.
Laborde dismissed his claims without prejudice against Bernard after State Farm stipulated that its policy provided coverage for the injuries and that it was liable to Laborde for all damages incurred as a result of the incident. Laborde amended his petition and alleged that Scottsdale insured not only the Club but Bernard individually, which Scottsdale denied.
On April 16, 1996, Laborde filed a Motion for Summary Judgment, regarding Scottsdale's coverage of Bernard and the Club. The trial court granted his motion. After the judgment was signed, Laborde dismissed his claims, with prejudice, against State Farm on June 19, 1996, reserving all rights against Scottsdale and any other party. That same day, Laborde filed a Motion to Bifurcate the Trial. The trial court ordered that the issue of insurance coverage be heard by the judge and the issues of liability and damages be heard by the jury. The parties proceeded with trial on that date. On June 20, 1996, the jury returned a verdict, finding Bernard 95% at fault in causing Laborde injuries and the Club at fault for 5%. The jury awarded special damages of $125,000.00 and general damages of $25,000.00.
After judgment was signed, Laborde filed a Motion for Judgment Notwithstanding the Verdict and alternatively, New Trial and/or Additur. Subsequently, the trial court denied Laborde's motion to increase the special damages, but granted the motion to increase the general damages to $175,000.00. Judgment was signed in favor of Laborde and against Scottsdale and the Club for $300,000.00. Scottsdale and the Club filed for a suspensive appeal to this court.

ASSIGNMENTS OF ERROR
Appellant claims that the trial court erred in:
1. Finding that Scottsdale insured Bernard.
2. Assessing fault to the club.
3. Casting the club and Scottsdale as the club's insurer, for the full amount of the jury verdict.

*250 4. Increasing the general damage award made by the jury.

LAW

WAS SCOTTSDALE BERNARD'S INSURER?
The evidence introduced at trial established that the Club was a non-profit corporation, organized on a non-stock basis. The Scottsdale policy was issued to Roy O. Martin Lumber Company, Inc. (ROM) as the named insured. Endorsement CG 20 26 11 85 provides that additional insureds under the policy include persons or organizations "As Per Schedule on file with Company." Endorsement 2 [UTS-2g(3-92)] provides that the named insured includes hunting clubs which are on file with the company. Scottsdale admitted that the Club was a named insured under the policy; however, nowhere in the policy is Bernard a named insured or an additional insured.
The policy states:
The word `insured' means any person or organization qualifying as such under WHO IS AN INSURED (SECTION II).
The policy defines who is an insured in Section II. It states:
1. If you are designated in the Declarations as:
A. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.
B. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

C. An organization other than a partnership or joint venture, you are an insured. Your executive officers and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

(Emphasis added.)
As the Club is not an individual paragraph A of the Scottsdale policy does not apply. The only possible application are paragraphs B and C.
Laborde argues that since the club did not avail itself of its corporate identity, that paragraph B (partnership or joint venture) should provide coverage. Paragraph B provides partners with coverage, but only concerning the conduct of club "business." As a recreational activity, hunting is not the "business" of the club. As with any country club, swimming club, or golf club, there are business activities, such as collecting dues, paying rent and utilities, and providing maintenance and upkeep for the purpose of supporting the recreational activities of the club. Under paragraph B, this policy explicitly covers only the business operations of the insured, not the recreation of hunting itself. Thus, while engaged in the recreational activity of hunting, Bernard is not an insured.
Under subsection C, the Club, as an "organization other than a partnership or joint venture" is an insured, as are its executive officers and directors, but only regarding their duties as "officers or directors." The stockholders are also insureds, but only as to their liability as stockholders. Bernard cannot qualify as a "stockholder", as there were no stockholders in the Club, and in fact, he admitted that he was not a stockholder. Even if we were to find him to be a "stockholder" or have the rights of a stockholder, coverage still would not be afforded Bernard, as the policy would only cover him concerning his stockholder's liability. In this instance, there is no "stockholder's liability" to any of the stockholders. Further, there is no evidence that Bernard was an executive officer or a director. Thus, it is apparent that he was not intended to be an insured at the time this policy was executed.
Nevertheless, Laborde argues that the Scottsdale policy is ambiguous, as it does not make any provisions for coverage of members of a non-stock corporation. In essence, he complains that because the policy does not cover Bernard, it is, therefore, ambiguous. To accept this argument as being correct, we would have to rewrite the insurance contract by judicial decree. This we will not do.
*251 The Code provides the rule we must follow for the interpretation of contracts. La.Civ. Code art.2046 states:
No further interpretation when intent is clear.
When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent.
The language of the Scottsdale insurance policy is clear and explicit under its provisions for who is an insured under the policy. Thus, we find that Bernard is not an insured under the Scottsdale policy, and the trial court erred in so holding by granting his Motion for Summary Judgment.

FAULT TO THE CLUB
At trial, Scottsdale moved to dismiss the claims against the Club on the ground that the Club breached no legal duty. The trial court denied the motion. The jury found that the Club was 5% at fault for causing Laborde's injuries. Scottsdale complains that this was an error.
The existence, or a lack of, a duty is a question of law. This court must decide whether the Club had a duty to protect Laborde against the risk that a member of his deer hunting party would aim a Browning 270 caliber rifle, with a telescopic sight, at him and fire, wounding him. We find no statutory, contractual, customary, or other legal duty owed by the Club to Laborde under these particular circumstances. (See Ermert v. Hartford Ins.Co., 559 So.2d 467 (La.1990). There, an association of hunters, rather than a non-profit corporation, as in the instant case, was not held responsible for the negligent shooting of another member of the "club" when the tortfeasor's negligent acts were the sole reason for the shooting.)
Notwithstanding, Laborde postulates that, had the Club conducted safety classes, this "accident" could have been prevented. While safety classes are always a good practice, he has supplied us with no evidence to prove how they could have made a difference in his case. Bernard says that, before shooting, he aimed. Aiming a rifle with a telescopic sight requires a conscious and deliberate effort. It requires looking through a telescopic sight, which magnifies the image, and seeing what is revealed before firing. There is a conspicuous difference between the appearance of two human beings on a four wheeler, whom he knew to be out there, and that of a hog. Safety classes are not necessary to be able to make this distinction. If he did aim, then why did he fire? And, if he did not aim, he obviously knew he should have. It is clear, from the bizarre circumstances of this shooting, that nothing the Club could have reasonably done could have prevented this incident, short of forbidding Bernard to hunt. And, this would have been unjustified since, prior to this incident, the Club had no reason to believe such action was warranted.
Further, none of the members of the Club were guilty of any separate or joint negligence; none of the other members of the Club caused, assisted, or encouraged Bernard's shooting of Laborde. La.Civ.Code arts. 2315 and 2316.
The trial court erred in not granting the Club's motion that it had no legal duty to Laborde in these circumstances and in assessing 5% fault to the Club.

FULL AMOUNT OF THE VERDICT
Scottsdale and the Club's third assignment of error is that the trial court erred in casting them for the full amount of the jury verdict. In view of our decisions on Appellants' first and second Assignments of Error, this issue is moot.

THE ADDITUR
The jury awarded Laborde $25,000.00 in general damages. The trial court increased this award to $175,000.00 on a post-trial motion. Appellant argues that this was an error. Because of our decisions above, this issue is likewise moot.

CONCLUSION
The trial court erred in holding that Bernard was insured by Scottsdale and that the Club owed a legal duty to Laborde such that it could be at fault for 5% of Laborde's damages. It is unnecessary for this court to address the issues of Scottsdale and the Club being cast for the full amount of the verdict *252 and the Additur. The judgment of the trial court is reversed, with all costs cast against plaintiff.
REVERSED AND RENDERED.
COOKS, J., dissents.